Kent O. Roche (Utah Bar No. 2783)
**PARSONS BEHLE & LATIMER**
201 S. Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6111
kroche@parsonsbehle.com

Warren T. Burns (to be admitted *pro hac vice*)
Daniel H. Charest (to be admitted *pro hac vice*)
Katharine K. McGuire (to be admitted *pro hac vice*)
**BURNS CHAREST LLP**
500 N. Akard St., Suite 2810
Dallas, Texas 75201
Telephone: (469) 904-4550
Facsimile: (469) 444-5002
wburns@burnscharest.com
dcharest@burnscharest.com
kmcguire@burnscharest.com

*Attorneys for Plaintiffs Rio Tinto plc and Rio Tinto America Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RIO TINTO PLC and RIO TINTO AMERICA INC., <br>         Plaintiffs, <br><br> v. <br><br> RSM US LLP, <br><br>         Defendant. | **COMPLAINT** <br><br> JURY DEMANDED <br><br> Case No. 2:16-cv-00378-RJS <br><br> Honorable Robert J. Shelby |

Plaintiffs Rio Tinto plc and Rio Tinto America Inc. (collectively, "Rio Tinto"), by and through undersigned counsel, file this Complaint against RSM US LLP ("McGladrey") and allege the following:

## I.  INTRODUCTION

1. This is a professional negligence and breach of contract action.  From 2012 to 2015, Rio Tinto engaged McGladrey to perform independent audits of qualified retirement plans offered to certain eligible employees of Rio Tinto America Inc.'s U.S. affiliates.  Rio Tinto engaged McGladrey to audit Rio Tinto's qualified retirement plans and the plans' financial statements for the years ended December 31, 2011, 2012, 2013, and 2014.

2. In conducting the audits, McGladrey committed to render an opinion on the financial data and status of each plan and to express an opinion as whether each plan's financial statements were presented fairly, in all material respects, and in conformity with U.S. Generally Accepted Accounting Principles ("GAAP").

3. During the annual audit process, auditors perform procedures to ensure the retirement plan is in compliance with both government regulations and requirements specified within the plan documents.   McGladrey also committed to conduct its audits in accordance with Generally Accepted Auditing Standards ("GAAS") and other binding industry standards.  Those standards, which establish an auditor's duty of care, require the auditor at all times to be independent and to maintain its independence in fact and appearance.  The entire auditing profession rests on this bedrock principle.

4. Federal law requires plan sponsors such as Rio Tinto to obtain and file with the Department of Labor and, in certain circumstances, the U.S. Securities & Exchange Commission ("SEC"), audit opinions by independent auditors concerning qualified plans such as those at issue in this case.  Absent such filings, companies cannot comply with the Employee Retirement Income Security Act of 1974 ("ERISA") and the Securities Exchange Act of 1934 ("Exchange Act").

5.      McGladrey breached its duty of care by violating the independence requirement with respect to Rio Tinto.  Prior to ever being retained by Rio Tinto to perform the audits, affiliates of McGladrey had performed and were continuing to perform services for three Rio Tinto subsidiaries in violation of applicable independence standards.  McGladrey did so without disclosing that performing such services would compromise McGladrey's independence and preclude reliance on McGladrey's audit opinions.

6.      McGladrey did not disclose its failure to attain and maintain its independence to Rio Tinto until late May 2015.

7.      On June 26, 2015, McGladrey and Rio Tinto jointly submitted a no-action letter to the SEC disclosing the independence violation and requesting that the SEC not object to the 2011, 2012 and 2013 audits performed by McGladrey as filed with the SEC as part of the retirement plans' annual reports on Form 11-K, thereby permitting Rio Tinto and others to rely on these existing audit opinions.

8.      After McGladrey's disclosure and submission of the no-action letter, Rio Tinto filed Form 12b-25's with the SEC to obtain a short extension until July 14, 2015 to file the retirement plans' annual reports on Form 11-K for the year ended December 31, 2014.  Due to the tight time frame, Rio Tinto replaced McGladrey with replacement auditors in order to complete the audits for the year ended December 31, 2014.

9.      The SEC declined to consider the no-action letter, at least in part because McGladrey was at that time under SEC investigation for similar independence violations with other clients.  McGladrey never disclosed to Rio Tinto that the SEC was investigating McGladrey or that it has, or had at the time, separate independence issues for performing similar activities for other clients.

10. Following the SEC declining to consider the no-action request, McGladrey withdrew its 2011, 2012 and 2013 audit opinions, forcing Rio Tinto to engage replacement auditors to also render opinions for these affected plan years, suspend American Depositary Receipt ("ADR") trading within certain plans, and to incur additional significant expense.

11. During the course of McGladrey's engagements, McGladrey also failed to identify timely and inform Rio Tinto of deficiencies in Rio Tinto's securities Registration Statements of Rio Tinto's qualified retirement plans, necessitating corrective action and significant additional expense.

12. Rio Tinto brings this action to recover its damages for McGladrey's professional negligence and breach of contract.

## II.  PARTIES

13. Plaintiff Rio Tinto plc is a public limited company organized under the laws of England and Wales, whose principal place of business is 6 St. James's Square, London SW1Y 4AD, UK.  Rio Tinto plc has a sponsored ADR facility and the underlying shares and ADRs are registered with the SEC and listed on the New York Stock Exchange.

14. Plaintiff Rio Tinto America Inc. is a Delaware corporation, authorized to do business in Utah, whose principal place of business is 4700 Daybreak Parkway, South Jordan, Utah 84009.

15. Defendant RSM US LLP is an Iowa limited liability partnership, with its principal place of business in Illinois. McGladrey provides auditing services throughout the United States, including in South Jordan, Utah.

## III.  JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Rio Tinto and McGladrey are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Rio Tinto's claims occurred in this district.

18. The Court has personal jurisdiction over McGladrey because McGladrey is registered to do business in Utah and is doing business in Utah.

## IV.   FACTUAL ALLEGATIONS

19. Rio Tinto entered into engagement letter agreements with McGladrey to perform annual audits of certain Rio Tinto qualified retirement plans for the years ended December 31, 2011, 2012, 2013, and 2014.

**2011 Agreement**

20. On April 18, 2012, McGladrey sent an engagement letter to Rio Tinto confirming an agreement between the two entities regarding auditing services for Rio Tinto's defined contribution retirement plans for the year ending December 31, 2011.

21. This agreement specified that McGladrey would audit the following qualified retirement plans:

   a. Rio Tinto America Inc. 401(k) Savings Plan and Investment Partnership Plan,

   b. Kennecott Corporation Savings Plan for Hourly Employees,

   c. U.S. Borax 401(k) Plan for Hourly Employees, and

   d. Rio Tinto Alcan 401(k) Savings Plan for Former Employees.

22. This agreement required McGladrey to perform auditing services for the Rio Tinto plans listed above in accordance "with auditing standards generally accepted in the United States of America and with auditing and related professional practice standards established by the Public Company Accounting Oversight Board (PCAOB)."

23. This agreement was signed on behalf of Rio Tinto on April 30, 2012.

24. On April 19, 2012, McGladrey sent an engagement letter to Rio Tinto confirming an agreement between the two entities regarding auditing services for Rio Tinto's qualified retirement plans for the year ending December 31, 2011.

25. This agreement specified that McGladrey would audit the following plans:

    a. Rio Tinto America Inc. Retirement Plan,

    b. Kennecott Corporation Pension Plan for Hourly Employees,

    c. U.S. Borax Inc. Pension Plan for Represented Hourly Employees,

    d. Alcan Pension Plan for Salaried Employees,

    e. Alcancorp Pension Plan,

    f. Alcancorp Sebree Hourly Pension Plan,

    g. Alcancorp Hourly Employees Savings Plan "Sebree Union 401(k),"

    h. Alcan Retirement Savings Plan for Hourly Employees,

    i. Alcan 401(k) Savings Plan for Union Employees,

    j. Alcan 401(k) Plan, and

    k. Alcancorp Employees Savings Plan.

26. This agreement required McGladrey to perform auditing services for Rio Tinto in accordance "with auditing standards generally accepted in the United States of America. . . ."

27. This agreement was signed on behalf of Rio Tinto on April 30, 2012.

28. On June 27, 2012, McGladrey conveyed its audit report regarding the subject plans. In its report, McGladrey stated: "No additional factor[s] have been identified since our communication dated April 18, 2012, that would affect our independence with respect to the Plans."

29. McGladrey performed its required conflicts analysis prior to executing the 2011 agreements, and did not discover any conflicts that would affect its relationship with Rio Tinto.

**2012 Agreement**

30. On April 15, 2013, McGladrey sent Rio Tinto an engagement letter confirming an agreement between the two entities regarding auditing services for several of Rio Tinto's defined contribution retirement plans.

31. This agreement specified that McGladrey would audit the following plans:

   a. Rio Tinto America Inc. 401(k) Savings Plan and Investment Partnership Plan,

   b. Kennecott Utah Copper 401(k) Savings Plan for Represented Hourly Employees,

   c. U.S. Borax Inc. 401(k) Savings and Retirement Contribution Plan for Represented Hourly Employees,

   d. Rio Tinto Alcan 401(k) Savings Plan for Former Employees,

   e. Alcancorp Hourly Employees Savings Plan "Sebree Union 401(k)," and

   f. Alcancorp Employees Savings Plan.

32. This agreement specified that McGladrey would "conduct [the] audit of the Plans' financial statements in accordance with auditing standards generally accepted in the United States of America and with the standards of the Public Company Accounting Oversight Board (PCAOB) (United States)."

33. This agreement was signed on behalf of Rio Tinto on April 22, 2013.

34. Also on April 15, 2013, McGladrey sent an engagement letter to Rio Tinto confirming an agreement between the two entities regarding auditing services for Rio Tinto's qualified defined benefit and defined contribution qualified retirement plans for the year ending December 31, 2012.

35. This agreement specified that McGladrey would audit the following plans:

   a. Alcan 401(k) Plan,

   b. Alcan Pension Plan for Salaried Employees,

    c. Alcancorp Pension Plan for Salaried Employees,

    d. Alcancorp Sebree Hourly Pension Plan,

    e. Rio Tinto America Inc. Retirement Plan,

    f. Kennecott Corporation Pension Plan for Hourly Employees, and

    g. U.S. Borax Inc. Retirement Plan for Represented Hourly Employees.

36. This agreement stated that McGladrey would "conduct [the] audits in accordance with auditing standards generally accepted in the United States of America (GAAS)."

37. This agreement was signed on behalf of Rio Tinto on April 22, 2013.

38. On June 19, 2013, McGladrey communicated its report regarding the subject plans. In its report, McGladrey stated:

> No additional factors have been identified since our communication dated April 15, 2013, that may reasonably be thought to bear on independence with respect to the Plans. Therefore, as of the date of this communication, we reaffirm that McGladrey LLP is independent with respect to the Plans, in compliance with PCAOB Rule 3520.

**2013 Agreement**

39. On April 2, 2014, McGladrey sent an engagement letter to Rio Tinto confirming an agreement between the two entities regarding auditing services for Rio Tinto's defined contribution retirement plans for the year ending December 31, 2013.

40. This agreement specified that McGladrey would audit the following qualified retirement plans:

    a. Rio Tinto America Inc. 401(k) Savings Plan and Investment Partnership Plan,

    b. Kennecott Utah Copper 401(k) Savings Plan for Represented Hourly Employees,

    c. U.S. Borax 401(k) Savings and Retirement Contribution Plan for Represented Hourly Employees,

    d. Rio Tinto Alcan 401(k) Savings Plan for Former Employees,

      e.   Alcancorp Hourly Employees Savings Plan "Sebree Union 401(k)," and

      f.   Alcancorp Employees Savings Plan.

41.    This agreement stated that McGladrey would "conduct our audit of the Plans' financial statements in accordance with auditing standards generally accepted in the United States of America (GAAS) and with the auditing and related professional practice standards of the Public Company Accounting Oversight Board (PCAOB)."

42.    This agreement was signed on behalf of Rio Tinto in April 2014.

43.    Also on April 2, 2014, McGladrey sent an engagement letter to Rio Tinto confirming an agreement between the two entities regarding auditing services for several of Rio Tinto's qualified defined benefit and defined contribution retirement plans for the year ending December 31, 2013.

44.    This agreement specified that McGladrey would audit the following plans:

      a.   Alcan 401(k) Plan,

      b.   Alcan Pension Plan for Salaried Employees,

      c.   Alcancorp Pension Plan for Salaried Employees,

      d.   Rio Tinto America Inc. Retirement Plan,

      e.   Kennecott Corporation Pension Plan for Hourly Employees, and

      f.   U.S. Borax Inc. Retirement Plan for Represented Hourly Employees.

45.    This agreement stated that McGladrey would "conduct [the] audits in accordance with auditing standards generally accepted in the United States of America (GAAS)."

46.    This agreement was signed on behalf of Rio Tinto in April 2014.

47.    On June 23, 2014, McGladrey communicated its audit report regarding the subject plans.  In its report, McGladrey stated:

> No additional factors have been identified since our communication dated April 2, 2014, that may reasonably be thought to bear on

      independence with respect to the Plans.  Therefore, as of the date of this communication, we reaffirm that McGladrey LLP is independent with respect to the Plans, in compliance with PCAOB Rule 3520.

**2014 Agreement**

48.     On March 31, 2015, McGladrey sent an engagement letter to Rio Tinto confirming an agreement between the two entities regarding auditing services for several of Rio Tinto's defined contribution retirement plans for the year ending December 31, 2014.

49.     This agreement specified that McGladrey would audit the following plans:

    a. Rio Tinto America Inc. 401(k) Savings Plan and Investment Partnership Plan,

    b. Kennecott Utah Copper 401(k) Savings Plan for Represented Hourly Employees,

    c. U.S. Borax Inc. 401(k) Savings and Retirement Contribution Plan for Represented Hourly Employees, and

    d. Rio Tinto Alcan 401(k) Savings Plan for Former Employees.

50.     This agreement provided that McGladrey would "conduct [the] audits of the Plans' financial statements in accordance with auditing standards generally accepted in the United States of America (GAAS) and with auditing and related professional practice standards of the Public Company Accounting Oversight Board (PCAOB)."

51.     Per the agreement, the audits of these plans were to be filed by June 29, 2015.

**Parties' Performance Under the Agreements**

52.     Pursuant to these agreements, McGladrey completed the following audits:

    a. U.S. Borax Inc. 401(k) Savings and Retirement Contribution Plan for Represented Employees: Annual Report on Form 11-K for the fiscal years ending December 31, 2011, December 31, 2012, and December 31, 2013.

    b. Kennecott Utah Copper Savings Plan for Represented Employees: Annual Report on Form 11-K for the fiscal years ending December 31, 2011, December 31, 2012, and December 31, 2013.

      c. Rio Tinto America Inc. 401(k) Savings Plan and Investment Partnership Plan: Annual Report on Form 11-K for the fiscal years ending December 31, 2011, December 31, 2012, and December 31, 2013.

      d. Rio Tinto Alcan 401(k) Savings Plan for Former Employees: Annual Report on Form 11-K for the fiscal years ending December 31, 2011, December 31, 2012, and December 31, 2013.

      e. AlcanCorp Hourly Employees' Savings Plan: Annual Report on Form 11-K for the fiscal years ending December 31, 2012 and December 31, 2013.

      f. AlcanCorp Employees' Savings Plan: Annual Report on Form 11-K for the fiscal years ending December 31, 2012 and December 31, 2013.

53. McGladrey also began the audit process on the following qualified retirement plans for the year ending December 31, 2014:

      a. Rio Tinto America Inc. 401(k) Savings Plan and Investment Partnership Plan,

      b. U.S. Borax Inc. 401(k) Savings and Retirement Contribution Plan for Represented Employees,

      c. Kennecott Utah Copper Savings Plan for Represented Employees, and

      d. Rio Tinto Alcan 401(k) Savings Plan for Former Employees.

54. As of Spring 2014, Rio Tinto had paid McGladrey over $1 million for the completed and pending audits.

**Industry Rules and Standards Required McGladrey to Exercise Due Care and to Maintain Its Independence**

55. An auditor's duty of care is generally defined by reference to GAAS, GAAP, and other binding industry standards, including those promulgated by the PCAOB.

56. GAAS requires that an "auditor must exercise due professional care in the performance of the audit and the preparation of the report" and that the "auditor must maintain independence in mental attitude in all matters relating to the audit."

57.     Among the binding standards applicable to all auditors performing audits under GAAS is that the auditor maintain its independence from the client. Auditor independence is a bedrock professional principle—and one that McGladrey expressly promised to maintain in its audits of the above referenced plans.

58.     PCAOB rules likewise require auditor independent. Rule 3520 states unequivocally: "A registered public accounting firm and its associated persons must be independent of the firm's audit client throughout the audit and professional engagement period."

59.     Auditor independence requirements generally preclude an auditor from acting as an agent for its client or acting in such a way so as to blur the lines between auditor and client. When auditing clients with global operations and foreign subsidiaries for United States reporting requirements, auditors must comply with GAAS and other applicable standards even with respect to foreign subsidiaries.

**McGladrey Was Not Independent**

60.     When conducting its audits of the Rio Tinto plans detailed above, McGladrey violated bedrock independence standards, thus precluding reliance on its opinions.

61.     On May 27, 2015, Tim McNeal, lead partner from McGladrey, emailed individuals at Rio Tinto and requested to speak with them about an issue that had arisen with respect to two foreign subsidiaries of Rio Tinto.

62.     On May 28, 2015, McGladrey informed Rio Tinto that one of McGladrey's affiliates, RSM Betty & Dickson, had improperly set up a Rio Tinto subsidiary bank account and then impermissibly paid fees from the account.

63.     During the May 28 phone call, McGladrey stated that it believed that RSM Betty & Dickson's improperly set-up bank account was inconsistent with the SEC independence rules and

impaired the independence of McGladrey's audit reports for the Plan years ended December 31, 2011, 2012 and 2013.

64.     At no time during the May 28 call did McGladrey disclose that it was under investigation by the SEC or that McGladrey had compromised its independence when performing audits for other clients.

65.     Rio Tinto subsequently learned that RSM Betty & Dickson had also been performing certain inappropriate corporate secretarial services for three affiliates of Rio Tinto that likewise violate applicable independence standards.

**Response to the Disclosed Lack of Independence**

66.     Following McGladrey's disclosure, Rio Tinto hired new auditors to complete the ongoing audits for the preceding fiscal year (2014).

67.     On June 26, 2015, McGladrey and Rio Tinto jointly sought a no-action letter from the SEC regarding the issues discussed by the entities in their May 28 phone call and further detailed in subsequent investigations.  As its name implies, a no-action letter indicates that the SEC will not take action, *inter alia*, when an entity is acting in violation of SEC regulations.

68.     For the first time, on July 9, 2015, McGladrey's legal counsel, Arnold & Porter, informed Rio Tinto's counsel that the SEC was inquiring into McGladrey's independence with respect to at least one other audit client.

69.     Thereafter, as a result of the pending inquiry, the SEC declined to provide any guidance on the no-action letter request.

70.     On July 10, 2015, the SEC informed Rio Tinto that McGladrey had been subpoenaed in relation to the SEC's inquiry into McGladrey's independence in other engagements.

71. Subsequently, McGladrey withdrew its completed audit opinions of Rio Tinto's qualified retirement plans for 2011-2013. The withdrawal of the audit opinions likewise delayed the 2014 audits, because no reliance could be placed on the preceding audits.

72. As a result of the position taken by the SEC and McGladrey's withdrawal of its audit opinions, Rio Tinto engaged a new auditing firm to re-audit the implicated retirement plans at a cost well exceeding $1.3 million in audit fees and other expenses, including those related to the cessation of trading in Rio Tinto's ADR fund. Re-auditing the financial statements for the period 2011-2014 took several months to complete and revealed issues that were not addressed in the original audit opinions.

**McGladrey Further Breached Its Duty of Care by Failing to Correct or Alert Rio Tinto to Deficient Registration Statements**

73. In plans like those used by Rio Tinto, SEC regulations require companies like Rio Tinto to register securities that will be offered to employees via benefit or incentive plans. Companies register such securities by filing Registration Statements, which are otherwise known as Form S-8s.

74. In exercising their duty of care, auditors like McGladrey routinely review Registration Statements for compliance with securities laws and advise their audit clients regarding any existing deficiencies.

75. During their audits of Rio Tinto plans in 2012 and 2013, McGladrey failed to identify any deficiencies in Rio Tinto's relevant Registration Statements.

76. For the first time, in Spring 2014, McGladrey inquired about the filing of Rio Tinto's Form S-8s.

77. McGladrey failed to identify that Rio Tinto's Registration Statements had not been properly updated and/or filed for three retirement plans:

    a. Rio Tinto America Inc. 401(k) Savings Plan and Investment Partnership Plan: Form S-8 had not been filed after this plan was created in 2003.

    b. Kennecott Utah Copper Savings Plan for Represented Employees: Form S-8 had not been updated since it was originally filed in the 1990s.

    c. U.S. Borax Inc. 401(k) Savings & Retirement Contribution Plan for Represented Employees: Form S-8 had not been updated since it was originally filed in the 1990s.

78. As a result of McGladrey's failure to timely identify the Registration Statement deficiencies, Rio Tinto incurred damages exceeding $1 million in legal fees and other expenses.

## V.  CONDITIONS PRECEDENT

79. All conditions precedent to Plaintiffs' claims for relief either have been performed or have occurred.

## VI.  CAUSES OF ACTION

**Count One: Professional Negligence**

80. Rio Tinto incorporates all preceding paragraphs and allegations as though fully set forth herein.

81. McGladrey held itself out as a professional Certified Public Accounting firm competent to provide independent auditing services.

82. Certified Public Accounting firms such as McGladrey have a legal duty to exercise the requisite degree of skill, knowledge, and expertise of other accountants.

83. The requisite degree of skill, knowledge, and expertise of other accountants is defined in GAAS and PCAOB.

84. PCAOB and GAAS state that independence and competency are essential requirements for auditors in the United States.

85. Section 10(a) of the Exchange Act also requires auditors to maintain independence from the entities for which they provide auditing services.

86. McGladrey committed professional malpractice and breached its duty of care when it failed to conduct auditing procedures in accordance with those standards.

87. Specifically, McGladrey breached its duty of care when it provided auditing services to Rio Tinto despite a lack of independence.

88. As a direct and proximate result of McGladrey's breach of its standard of care, Rio Tinto was forced to hire a new auditing firm to re-audit the retirement plans for 2011-2013 and to finish the 2014 audit and to suspend ADR trading in certain plans.

89. McGladrey also specifically breached its duty of care when it failed to alert Rio Tinto to deficiencies in Rio Tinto's Registration Statements.

90. As a direct and proximate result of McGladrey's breach of its standard of care, Rio Tinto underwent a voluntary rescission offer of affected ADRs related to the inadequate Form S-8s.

91. As a direct and proximate result of McGladrey's breach of its standard of care, Rio Tinto has suffered damages in an amount to be proven at trial.

**Count Two: Breach of Contract**

92. Rio Tinto incorporates all preceding paragraphs and allegations as though fully set forth herein.

93. Rio Tinto and McGladrey entered into valid and binding contracts for auditing services for Rio Tinto's retirement plans for the years 2011-2014.

94. The contracts required that McGladrey provide auditing services, including an audit of certain retirement plans' financial statements, in exchange for payment from Rio Tinto.

95. Rio Tinto fulfilled all of its contractual duties by providing all requested information and fully compensating McGladrey for its services.

96. McGladrey breached its contractual duties by failing to provide services in accordance with auditing standards generally accepted in the United States of America, GAAS, and PCAOB.

97. Rio Tinto suffered damages as a result of McGladrey's breach of contract in an amount to be proven at trial.

## VII.  JURY DEMAND

98. Rio Tinto requests a trial by jury on all causes of action pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VIII.  PRAYER FOR RELIEF

99. WHEREFORE, Rio Tinto respectfully requests that the Court find in its favor and against McGladrey, and that the Court grant Rio Tinto the following relief:

   a. Damages in an amount to be proven at trial, believed to be in excess of $2 million;

   b. Prejudgment and post-judgment interest as allowed by law;

   c. Such other and further relief as the court deems appropriate.

DATED this 5th day of May, 2016.

                                      Respectfully submitted,

                                      /s/ Kent O. Roche
                                      Kent O. Roche (Utah Bar No. 2783)
                                      **PARSONS BEHLE & LATIMER**
                                      201 S. Main Street, Suite 1800
                                      Salt Lake City, Utah  84111
                                      Telephone: (801) 532-1234
                                      Facsimile:  (801) 536-6111
                                      kroche@parsonsbehle.com

                                      Warren T. Burns (to be admitted *pro hac vice*)
                                      Daniel H. Charest (to be admitted *pro hac vice*)
                                        Katharine K. McGuire (to be admitted *pro hac vice*)
                                      **BURNS CHAREST LLP**
                                      500 N. Akard St., Suite 2810
                                      Dallas, Texas 75201
                                      Telephone: (469) 904-4550
                                      Facsimile: (469) 444-5002
                                      wburns@burnscharest.com
                                      dcharest@burnscharest.com
                                      kmcguire@burnscharest.com

                                      *Attorneys for Plaintiffs Rio Tinto plc and Rio Tinto America Inc.*